NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 20 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL; ALLIANCE FOR THE WILD ROCKIES, | No. 18-35687 |
| Plaintiffs-Appellants, | D.C. No. 9:17-cv-00053-DWM |
| v. | MEMORANDUM[*] |
| MARY ERICKSON, Custer Gallatin National Forest Supervisor; et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted November 8, 2019
Portland, Oregon

Before: GILMAN,[**] PAEZ, and RAWLINSON, Circuit Judges.

Appellants Native Ecosystems Council and the Alliance for the Wild

Rockies appeal the district court's order granting summary judgment in favor of

Defendants. We have jurisdiction under 28 U.S.C. § 1291. *See Ctr. for Biological*

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

*Diversity v. Ilano*, 928 F.3d 774, 779 (9th Cir. 2019). We review claims under the National Environmental Policy Act (NEPA) and the National Forest Management Act (NFMA) by utilizing the Administrative Procedure Act (APA), and we may set aside agency action that was arbitrary or capricious. *See id.* at 779–80; *see also Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 846 (9th Cir. 2013). No private cause of action exists under the Healthy Forest Restoration Act (HFRA), so asserted violations are also reviewed under the APA. *See* 16 U.S.C. §§ 6501, 6515; *see also Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005).

1.      Initially, the district court did not abuse its discretion in declining to expand the administrative record. The proffered materials, including an overlay map, do not satisfy any of the "four narrowly construed circumstances" in which we allow expansion of the administrative record. *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

2.      The United States Forest Service (Forest Service) was not required to prepare an environmental impact statement (EIS) for the designation of landscape-scale areas. Under NEPA, a federal agency need not prepare an EIS when the proposed federal action does not "change the status quo." *Ilano*, 928 F.3d at 780 (citation omitted). Because the designation of landscape-scale areas did not change the status quo, but only designated damaged areas of the forest, the

2

decision did not trigger an obligation to prepare an EIS. *See id.* at 780–81.

3. The Forest Service decision to categorically exclude the Smith Shields Project (Project) from NEPA was not arbitrary or capricious. An agency may issue a categorical exclusion for a project approved under HFRA in certain circumstances. *See id.* at 782 (citing 16 U.S.C. § 6591b(a)). The categorical exclusion applies if, among other requirements, the project "maximizes the retention of old-growth and large trees, as appropriate for the forest type, to the extent that the trees promote stands that are resilient to insects and disease." 16 U.S.C. § 6591b(b)(1)(A). In this case, the Forest Service concluded, based on scientific research and analysis by its experts, that no old growth would be removed in conjunction with the Project. An agency must have discretion to rely upon the reasonable opinions of its own qualified experts. *See Ilano*, 928 F.3d at 783. Accordingly, there exists a reasonable basis for the Forest Service's application of the categorical exclusion.

4. The Forest Service decision to not prepare an EIS for the "Clean Up Amendments" to the Forest Plan regarding old-growth forest and elk hiding cover was not arbitrary or capricious. If, after preparing an environmental assessment (EA), an agency finds that an action would have "no significant impact" on the human environment, it may issue a finding of no significant impact (FONSI) and is not required to prepare an EIS. 40 C.F.R. §§ 1501.4, 1508.9, 1508.13; *see also*

*Native Ecosystems Council*, 428 F.3d at 1238–39.  We review "whether the agency has taken a hard look at the consequences of its actions, based its decision on a consideration of the relevant factors, and provided a convincing statement of reasons to explain why [an action's] impacts are insignificant."  *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 730 (9th Cir. 2001) (internal quotations, alterations, and citations omitted).  We conclude that the Forest Service has complied with these requirements in the present case.

**5.** As to the old-growth standard, the original and amended standards both require the Forest Service to strive to maintain 10% old-growth forest.  But the amendment altered the scale over which that percentage must be achieved, moving from the "timber compartment" to the "mountain range" scale.

Appellants argue that the Forest Service's FONSI regarding the old-growth amendment was arbitrary and capricious.  In evaluating the amendment, the Forest Service explained that the larger scale would yield more reliable data and was more consistent with the Forest Plan's original goal of achieving habitat diversity across the landscape.  The Forest Service also evaluated the effects of the amendment, determining that it would not affect wildlife associated with old-growth forest and also that it would likely cause an *increase* in old growth in the long term.  Given these determinations, even if old growth may vary from one timber compartment to the next, it was not arbitrary or capricious for the Forest

4

Service to conclude that the new scale would not have a significant impact on the environment.

The remaining challenges to the old-growth amendment similarly fail. Appellants claim the 10% old-growth requirement, which now applies to "lands classified as forested," previously applied to a larger area. We disagree. Logically, the Forest Service can "strive to maintain" old-growth only where it exists. Accordingly, the previous standard's requirement of maintaining 10% old-growth cover in timber compartments "containing suitable timber" necessarily applied to forested areas. Appellants also argue that the Forest Service, in amending the indicator-species standard, removed the only two indicator species for old-growth forest (i.e., northern goshawk and pine marten). Again, we disagree. Northern goshawk and pine marten continue to be indicators for "mature forest," a category that includes old-growth forest. Appellants' remaining arguments that the old-growth-related amendments were significant are unavailing.

6. As to the elk hiding-cover standard, the original and amended standards both require the Forest Service to maintain at least two thirds of hiding cover. The amendment again altered the denominator. Instead of maintaining two thirds of the "hiding cover associated with key habitat components," the Forest Service must now maintain two thirds of specific tree species "on National Forest System lands" and "with at least 40% canopy cover."

Appellants first challenge these changes as unsupported by the best available science, a requirement under NFMA. 36 C.F.R. § 219.3. But in evaluating the hiding-cover amendment, the Forest Service considered a collaborative report prepared with the Montana Department of Fish, Wildlife, and Parks in 2013, which included a significant review of research on elk security.[1] The collaborative report found that stands with 40% canopy cover "consistently functioned" to meet the hiding-cover definition; that certain tree species are "naturally capable of having relatively dense (>=40%) canopy cover"; and that "a specific quantifiable cover recommendation was not supported by the scientific literature," specifically rejecting as untested prior reports recommending cover be "two-thirds of the total area." These findings support the hiding-cover amendments, and "we are required to apply the highest level of deference in our review of the Forest Service's scientific judgments in selecting the elk hiding cover methodology." *Native Ecosystems Council v. Weldon*, 697 F.3d 1043, 1053 (9th Cir. 2012).

Appellants argue the Forest Service's FONSI regarding the hiding-cover amendments was arbitrary and capricious. Appellants claim the two-thirds

---

[1] Appellants' argument that the Forest Service improperly "tiered" to the collaborative report lacks merit. "Tiering" refers to an agency's incorporation by reference of another NEPA document's broad discussion of environmental impacts. *See* 40 C.F.R. § 1502.20. The administrative record includes the report because the Forest Service considered it, not because the Forest Service tiered to it. In any event, Appellants' "best available science" challenge is raised under NFMA, but only NEPA's regulations address tiering.

requirement previously applied to the total area of the relevant landscape, but the pre-amendment standard contained no such language. Instead, the requirement was to maintain two thirds of the "hiding cover associated with key habitat components," and the standard listed examples of such key habitats and explained they would be "mapped on a site-by-site basis." Appellants similarly claim the two-thirds requirement previously applied to all forested areas and not just those on the National Forest lands. But again, the old standard contained no such language and was tied to maintaining key habitat components where they already existed. Appellants claim that the amendment reduces hiding-cover protection by now applying to only some tree species. But the Forest Service named those species simply to point out trees "naturally capable" of providing sufficient cover. The amended standard is therefore more precise but not less protective. Appellants' remaining arguments that the hiding-cover amendments were significant are unavailing.

**AFFIRMED.**

7



*Native Ecosystems Council v. Erickson*, **Case No. 18-35687**
**Rawlinson, Circuit Judge, concurring in part and dissenting in part:**

Although I agree that the designation of landscape-scale areas under the Healthy Forest Restoration Act did not require the preparation of an Environmental Impact Statement (EIS), I respectfully dissent from the majority's conclusions that the Forest Plan amendments addressing old-growth and elk-hiding cover did not trigger the requirement for a supplemental EIS addressing the amendments.

The Forest Service amended the old-growth standard as follows:

| Forest Plan Standard 6(c)(2) | Amended Standard 6(c)(2) |
|---|---|
| In order to achieve size and age diversity of vegetation, the Forest [Service] will strive to develop the following successional stages in timber compartments containing suitable timber:<br><br>Successional Stage\Minimum % of Area<br>. . .<br>Old Growth                          10 | "Use fire and other management tools to help achieve vegetative size and age class diversity. In part, to achieve this vegetative diversity, strive to maintain a minimum 10% old-growth forest on lands classified as forested at the mountain range scale." |

This amendment substantially changed the old-growth measurement by changing the unit of measurement. Prior to the amendment, the ten percent old-growth amount was measured at a "timber compartment level." The amended standard provided for the ten percent old-growth amount to be measured at the "mountain range scale." The effect of this change was to allow the Forest Service

1

to declare that it had complied with its old-growth standard if it could point to ten percent over-growth anywhere on the mountain range, even if the standard was not met in the timber compartment area being affected by a particular project. This is such a significant change that a supplemental environmental impact statement was warranted to insure that affected species were not negatively impacted. *See Ctr. for Biological Diversity v. Ilano*, 928 F.3d 774, 779, 780 (9th Cir. 2019).

The same is true for the amendments to the elk-hiding cover standard. The Forest Service amended that standard as follows:

| **Forest Plan Standard 6(a)(5):** | **Amended Standard 6(a)(5):** |
|---|---|
| Maintain at least two-thirds of the hiding cover associated with key habitat components over time. . . . Key habitat components are important features for wildlife. They include moist areas (wallows, etc.); foraging areas (meadows and parks); critical hiding cover (see Glossary in Chapter VI for definition); thermal cover; migration routes; and staging areas. These areas will be mapped on a site-by-site basis during project area analysis. | Vegetation treatment projects (e.g., timber harvest, thinning and prescribed burning) shall maintain at least two-thirds (2/3) of Douglas fir, lodgepole pine, and subalpine fir conifer forest cover types (on National Forest System lands), with at least 40% canopy cover (on National Forest System lands), to function as hiding cover for elk at any point in time. Hiding cover will be assessed for an elk analysis unit (EAU) which is based on a collaborative mapping effort between the local state (MDFWP) wildlife biologist and the local Forest Service wildlife biologist. . . . |

The problem with the amendment is that it again substantially modified the

standard of measurement without adequately exploring the effect of the newly adopted standard on available elk-hiding cover. Under the new standard, for example, only hiding cover provided by certain types of tress was included in the analysis. Also omitted were sources of hiding cover other than trees. These omissions were inconsistent with the recommended amount of "good cover" from acknowledged experts in this field. *See* L. JACK LYON, ET AL., COORDINATING ELK AND TIMBER MANAGEMENT, FINAL REPORT OF THE MONTANA COOPERATIVE ELK-LOGGING STUDY,1970-1985 9 (1985); *see also* Jack W. Thomas, et al., *Wildlife Habitats in Managed Forests: the Blue Mountains of Oregon and Washington*, 553 U.S.D.A. FOREST SERVICE HANDBOOK 109 (Sept. 1979).

In sum, the Forest Service's amendments to the Forest Plan "entirely failed to consider [] important aspect[s] of" the amendments, rendering their adoption of the amendments arbitrary and capricious. *Hapner v. Tidwell*, 621 F.3d 1239, 1244 (9th Cir. 2010) (citation omitted).